The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses in part and affirms in part the Deputy Commissioner's holding and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by parties in a Pre-Trial Agreement and at the hearing on 17 March 1997 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Defendant is a duly qualified self-insurer under the provisions of the Act.
4. The date of plaintiff's injury was 12 June 1991.
5. The parties entered into an Industrial Commission Form 21 Agreement For Compensation, which was approved by the Industrial Commission on 6 April 1992.
6. Plaintiff's average weekly wage is $568.00, yielding a compensation rate of $378.86.
7. The parties stipulated to plaintiff's medical records from J.A. Sanders, M.D., Raymond Sweet, M.D., A. I. Light, M.D., Russell T. Garland, M.D., Anthony Wheeler, M.D., Bruce Darden, M.D., Nandlal C. Shah, M.D., W. Michael Nesbit, M.D., Charlotte Orthopaedic Specialists, and The Rehab Center of Charlotte.
***********
Based upon the record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 7 March 1997, plaintiff was 42 years old. He began working for defendant-employer at its parts manufacturing plant in Gastonia on 7 January 1983 and has worked continuously since that date.
2. On 12 June 1991, plaintiff sustained an admittedly compensable injury by accident, when he experienced pain in his right rib area while moving a die. Plaintiff has continued to experience rib pain in the chest and back areas since that date.
3. The parties entered into an Industrial Commission Form 21 Agreement for Compensation for costal chondritis, a condition involving inflammation of rib cartilage. This Form 21 was approved by the Industrial Commission on 6 April 1992. Pursuant to this Form 21, plaintiff was paid temporary total disability compensation from 12 December 1991 to 18 December 1991.
4. Plaintiff returned to work on or about 19 December 1991 and has worked regularly since that time. Plaintiff currently works as a maintenance helper which requires him to lift up to twenty-five (25) pounds.
5. Following his injury, plaintiff was examined by Dr. James A. Sanders for evaluation of right rib pain. Dr. Sanders diagnosed a right shoulder strain, which he treated conservatively. A bone scan of plaintiff's ribs obtained in July of 1991 was negative. Dr. Sanders released plaintiff on 7 July 1992 to return to work at his regular job.
6. Plaintiff then consulted with Dr. Raymond Sweet, a neurosurgeon, on 31 July 1991. Dr. Sweet initially opined that plaintiff had costal chondritis, but also suspected plaintiff may have sustained a thoracic ruptured disc.
7. Plaintiff was then examined by Dr. A. I. Light on 6 August 1991. There were x-rays taken of plaintiff's ribs, but no abnormalities were revealed.
8. On 22 June 1992, plaintiff consulted Dr. Russell Garland, an orthopaedic surgeon. Dr. Garland diagnosed costal chondritis and released plaintiff to continue working at regular duty. A Functional Capacity Evaluation obtained in November of 1992 indicated plaintiff could perform medium to heavy work.
9. In May of 1993, Dr. Garland obtained another bone scan which revealed increased uptake on the left side, but no increased uptake on the right side. A thoracic MRI scan revealed protruding discs at the T6-7 and T7-8 levels, with impingement on the spinal cord. Dr. Garland permitted plaintiff to continue working, but suggested that he be examined by Dr. Bruce Darden, a spine specialist and orthopaedic surgeon.
10. On 15 June 1993, plaintiff was examined by Dr. Darden. A clinical examination revealed no neurological abnormalities. Dr. Darden obtained cervical and thoracic myelograms and CT scans, which failed to show a surgical lesion. These studies revealed disc bulges.
11. Dr. Darden then referred plaintiff to Dr. Anthony Wheeler for admission to a pain management program at Health South. Plaintiff completed this program, which included biofeedback, exercises and psychological counseling in April of 1994. Dr. Wheeler opined that plaintiff had reached maximum medical improvement on 7 April 1994 and rated him with an eight percent (8%) permanent partial disability of the back.
12. Plaintiff returned to Dr. Darden on 13 February 1995 at which time his complaints were "new and different" from before. On 17 June 1996, plaintiff complained to Dr. Darden of increased pain in his mid-back. Plaintiff's wife informed Dr. Darden that plaintiff had experienced suicidal ideations. Dr. Darden recommended that he enter a pain management program designed to improve his physical condition and to alleviate his suicidal ideations. Although Dr. Darden permitted plaintiff to return to work, he also recommended a lifting restriction of twenty (20) pounds. This recommendation was in part based on plaintiff's subjective complaints of pain, which Dr. Darden noted was a common basis for making such a recommendation.
13. Plaintiff saw Dr. Michael Nesbit, a neurologist with a subspecialty in neuro-rehabilitation, on 26 May 1996. Dr. Nesbit has practiced in the field of rehabilitation medicine for several years and has been medical director or attending physician for several pain management programs. Dr. Nesbit performed a comprehensive review of plaintiff's prior medical records and diagnostic studies and interviewed plaintiff at length. Dr. Nesbit's clinical examination failed to reveal any structural abnormality to explain plaintiff's pain.
14. Because plaintiff has not been afforded medical treatment since 17 June 1996, there is no evidence in the record regarding his suicidal ideations subsequent to that date.
15. Although able perform his duties, plaintiff has continued to experience pain as the result of his 12 June 1991 injury by accident since his return to work on 19 December 1991.
16. Based upon the credible medical evidence, plaintiff would benefit from a pain management program and continued medical treatment as directed by his physicians. Such treatment is reasonably necessary to give plaintiff relief from the continued pain he has experienced as the result of his 12 June 1991 injury by accident.
17. As the result of his 12 June 1991 injury by accident, plaintiff was unable to earn wages in his former position with defendant-employer or in any other employment from 5 December 1991 through 11 December 1991.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As the result of his 12 June 1991 injury by accident, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $378.86 per week for the period of 5 December 1991 through 11 December 1991. Industrial Commission Rule 401(4); G.S. § 97-29.
2. As the result of his 12 June 1991 injury by accident, plaintiff is entitled to be paid by defendant permanent partial disability compensation at the rate of $378.86 per week for a period of twenty-four (24) weeks for the eight percent (8%) permanent partial disability to his back. G.S. § 97-31(23).
3. The industrial Commission Form 21 Agreement for Compensation, which was approved on 6 April 1992, constitutes an award of the Commission and an admission of liability by defendant for plaintiff's injury by accident and related medical expenses.Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434
(1996), disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997). Pursuant to this Award of the Commission and defendant's admission of liability, plaintiff met his initial burden of proving a causal relationship between his 12 June 1991 injury by accident and his complaints of rib pain in the chest and back areas. G.S. § 97-25;Parsons v. The Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867
(1997). Therefore, the burden is now on defendant to prove that plaintiff's current condition and complaints of pain are unrelated to his initial injury by accident, and defendant has failed to do so. Id.
4. As the result of his 12 June 1991 injury by accident, plaintiff would benefit from and is entitled to have defendant pay for his admission to a pain management program and continued medical treatment as directed by his physicians. G.S. § 97-25;Hyler v. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993). Such treatment is reasonably necessary to give plaintiff relief from the continued pain he has experienced as the result of his 12 June 1991 injury by accident. Id.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part and affirms in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $378.86 per week for the period of 5 December 1991 through 11 December 1991.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $378.86, per week for a period of twenty-four (24) weeks for the eight percent (8%) permanent partial disability to plaintiff's back.
3. Defendant shall pay for plaintiff's admission to a pain management program for treatment of the pain he has continued to experience as the result of his 12 June 1991 injury by accident. Defendant shall continue to provide this and other medical treatment for so long as reasonably necessary and as directed by his physicians.
4. A reasonable attorney's fee of twenty-five percent (25%) is approved for plaintiff's counsel to be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs, including expert witness fees to Dr. Darden and Dr. Nesbit as previously ordered by the Industrial Commission.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER